We'll call the case of Wilson-Flores-Jimenez versus the Attorney General of the United States. Good morning. Is it Ms. Cirillo? Yes, Judge. And I'll defer to you, but you're free to take the mask off while you are. It's really up to you. I hadn't realized I still had it on. Okay. May it please the court, my name is Pina Cirillo on behalf of the petitioner Wilson-Flores-Jimenez with the court's permission, I reserve three minutes for rebuttal. Sure. This case involves many issues, but the permeating issue here is mental health. The agency's failure to meaningfully consider the mental health records impacts many aspects of Mr. Flores-Jimenez's claim, but I'd like to focus on five today. First, the agency erred in finding Mr. Flores-Jimenez to be competent, where ignored record evidence of his severe competency issues. Second- What do you make of the colloquy the court had with your client? So the judge- That's really the judge's best point of reference? I would say no. Based on the record evidence here, the Trenton psychiatric records show that he is, quote, a not a reliable source of information. And he has numerous times denied his mental health condition, despite records showing that he suffers from psychosis, paranoid delusions, and that he is out of touch with reality. So the 30 to 45 minute in court testimony, which was conducted by video, not in person, is not sufficient to replace a six month stay at a psychiatric hospital where he was properly diagnosed, made by an immigration judge who is not a mental health expert. And here we are saying that the agency failed to consider this evidence, and in viewing the entirety of his psychiatric history, because the nature of his mental illness required the immigration judge here to consider the possibility that he has the capacity to mask his symptoms, and that his mental illness ebbs and flows, and that the visibility of his symptoms is not an appropriate gauge for determining mental competency. Sometimes the symptoms are obvious. So I'm sorry, I thought you were going to say something good. Sometimes the symptoms are obvious, and other times they are subtle, but the mental illness is always there. In this case, Yoanka Cepeda never disappears from Mr. Flores-Gimenez's life. Sometimes she is just disrespectful to him. Sometimes she is casting his checks or dating someone new, and in response, Mr. Flores-Gimenez files complaints with the police, which is reflected in the record at page 807. Other times, Yoanka poses a threat to his physical safety and well-being, such that he resorts to which led to his arrest, that led to his ICE custody. This is a ceaseless cycle, because at all times, Yoanka is there causing him harm. She can hack any and every phone that Mr. Flores-Gimenez has, any computer, including the court computers, and that's how she always knows where he is. And her objective is to ruin his life, which is why she always turns up. And this was reflected in the mental health records, particularly the Trenton Psychiatric Records, that noted drastic difference between when Mr. Flores-Gimenez is taking his medicine and when he cannot take them or refuses to take them. But isn't the point of reference his mental health on the day of the hearing? It is on the day of the hearing. However, Matter of MAM first says that mental health is not static, and so that the judge has a duty to assess it throughout proceedings, which I asked for a reassessment on the day of his individual hearing. That was not granted. How long did the proceeding last? The mental competency hearing? Yeah. I mean, the whole procedure, not just... I mean, the competency was, if he had been judged competent by the evaluator then, then that was competency for the whole proceeding, right? Matter of MAM does not say that that should be the rubric. Matter of MAM says that mental health is not a static condition, that it is fluid, and that a judge has a duty to assess it throughout proceedings, and neither party bears the burden of proof. I think we're saying the same thing. Okay. But you are saying, yes, it does, and it should be re-evaluated through the My question is, how long did all this proceeding last? How many months? Well, where the immigration judge was taking evidence considering whether relief should be granted or not. So let me just clarify the timeline. The mental competency hearing took place in June of 2020, and that was a video hearing that... The testimony that he provided, I think, lasted between 30 to 45 minutes, although the entire proceeding may have been longer because of opening arguments and evidentiary issues. His individual hearing was conducted in September of 2020, and that was a hearing that was split over two days between September and October because of the presentation of the expert witness. So you're saying that the original competency hearing did not necessarily indicate whether in September and October the petitioner was competent? We are saying that. In addition to that, at that June hearing, he was not competent, although he was able to mask that competence. He was able to answer questions at that June hearing like, where are you now? And how many children do you have? But notably, he went off on tangents about this woman that I just mentioned, Yowanka Cepeda, when the judge asked him a simple question like, where do you live? He started talking about a check that she cashed for $3,750 and that he had filed a police report against her. But even if the judge were permitted to just take the in-court testimony alone as an assessment of competency, which the case law does not say that she can, for those reasons, his in-court testimony did not demonstrate competence. In addition, the record evidence, which the immigration judge ignored, shows that he was telling the Hudson County correctional staff that someone was hacking the court system because they wanted him to stay in jail. He could hear them through the speakers. His court paperwork was missing. We have evidence that Trenton Psychiatrics said he was not a reliable source of information, that he was in denial of his condition. Trenton Psychiatrics said his paranoid delusions prevented him from participating in a sustained rational discussion regarding his legal consequences, legal circumstances, I'm sorry. He submitted an inmate request form at Hudson County saying, quote, Yowanka Cepeda is hacking the computer, the same girl that hacking she was born January 28, 1972. Is it the case that this condition has existed for over 20 years? That is something that I can't opine on. I'm not a mental health expert. I'm just looking at my notes, and it does appear that he was diagnosed quite some time ago. But currently, the most current one I have is November 2020. He's diagnosed with a form of psychosis. I believe the first diagnosis we have in the record is from 2019, when he was committed to Trenton Psychiatric. He was arrested in 2017 and spent some time at Hudson, I'm sorry, Hoboken University Medical Center, where he was assessed for competency. But the first diagnosis, I believe, comes from his Trenton Psychiatric stay. So what relief are you asking for? You're arguing that this person is not competent, right? And may never be competent. So what are you asking us to do in light of that? Assuming we agree with you. So we are asking for a remand so that the judge can either first assess competency under the appropriate standard. And if the judge finds him not to be competent, either assign safeguards or consider what we had asked for before the court, which was administrative closure or termination, which administrative closure would be an appropriate alternative if he could be in some sort of treatment and then given the option to stabilize himself and then come back to immigration court proceedings at a later time. But during this point that he was testifying in proceedings and throughout his individual hearing, there's evidence to show that he did not have a factual or rational understanding of the proceedings against him. And even in the expert report that we had secured by Dr. Dranoff, she says that his cognitive and emotional functioning at the time of the current assessment indicate that he is impaired in his ability to make consistent and accurate statements towards his legal proceedings. And this is in addition to the fact, Your Honors, that communication with counsel, who is myself, was hindered throughout proceedings. He was unable to articulate simple things to me, like how and when he entered. And more importantly, I couldn't rely on the information that he was giving, which is why we asked for several safeguards that were not granted. I'm sorry to interrupt, but I just want to get to the heart of it. Is he being considered for removal? Removal proceedings were initiated against him. And what's the status of those proceedings? The immigration judge found him removable and denied his applications for relief. Okay. And of course, if a judge makes that determination, should he be removed? Or is the determination that he is removable? If proceedings were terminated? If proceedings were terminated, then he would not be charged as removable and he would be able to remain here in the United States. He would not have status, but he would at least be in the safety of a country where he does not fear. But those charges have not been terminated? No. Your underlying concern here is that he was never competent. Yes, Judge. So therefore, we need to send this back for a new competency hearing? A new competency hearing and the proper review of the evidence and allocation of safeguards. But the threshold issue is competency. See, yes. Is it your position that the hearing on competency is insufficient and across the board should be re-evaluated? Or are you saying, in other words, is this an unsupplied challenge or a facial challenge? You're simply saying that for this particular individual, the type of competency hearing was insufficient or inappropriate? We're saying a couple of things. So first, the judge did not consider the evidence that she should consider when making a competency determination. Pursuant to matter of MAM, the judge should look at the petitioner's demeanor, documentary evidence, maybe letters from friends and family, and anything in the record that can demonstrate competence. Here, if you look at the immigration judge's oral decision, she exclusively looks at his in-court testimony and demeanor and makes a passing reference to his Trenton psychiatric records, which diagnose him with psychosis and say he's not a reliable source of information, and barely makes a reference to any of the other documents in the record. There was a hearing called the Myrie hearing. Are you familiar with that? A Myrie hearing? I know, Myrie, the cat case? I'm not sure of the last part of that. But it is a hearing to determine a competency in many contexts. You're not familiar with it at all? Are you talking about in the criminal context? No. We've had, if you were here for the first argument, we've been talking about different kinds of competency. And the competency here is, is it not, is the competency to understand the proceeding that is going forward and to communicate to counsel on counsel's request the relevant information that the petitioner may have? And is the type of hearing that was held for competency here insufficient to make that determination? Yes. So the hearing that was held in this case was pursuant to matter of MAM, which is the immigration case outlining mental competency for proceedings. And the hearing here, we are saying did not comport with what is required under MAM. Is that your request that this matter be remanded for that purpose? Yes. In addition to the other issues, which I noticed that I am out of my time, but we also are asking for a remand or reversal on the one-year determination, which ties very closely to his mental health, his claim of relief under the Convention Against Torture, which also is very closely tied to his mental health because he fears being arrested in the Dominican Republic and being involuntarily restrained or tortured by gang members and the government will turn a blind eye. We're also arguing that he has suffered past persecution on account of a protected ground, which the immigration judge here found that the harm rose to a level of past persecution, but that he did not establish a particular social group. And also that he has a well-founded fear of future persecution on account of several protected grounds in addition to his imputed political opinion, some of those which also tie into his mental health. But I do notice that I am at the end of my time. I'm trying to struggle with my hearing questions, which I understand are required in cases like this. And so the question I had is whether an applicant has met the burden of establishing that it's more likely than not that he would be tortured if removed. That's one of the myriad questions. Could you respond to that? In our briefing? Oh, could I respond to that? I'm sorry, I thought you said, did you respond to that? Yes. So here we are saying that the immigration judge did not conduct the proper two-prong analysis as required under MIRI because Mr. Flores-Gimenez... That's actually what I was getting at. Yes. The MIRI? Was it done properly? That's fine. Because going back to his mental competency, the IG here under-appreciated Mr. Flores-Gimenez's mental competency issues, which tainted his CAT claim. So the chain of events that is likely to happen here is that Mr. Flores-Gimenez will arrive in the Dominican Republic in a state of fight or flight. He will be, quote, out of touch with reality. He will look distressed, disheveled, and be known by incoming authorities as being a criminal deportee, which is reflected in the expert report. And he may not even make it out of the detained. If he does make it out of the airport, he'll have his identity documents stamped with the word deportee. He'll begin a special registration process with the Dominican government. He'll be monitored and required to attend psychological check-ins that he'll most certainly fail, causing him to lose employment, access to his meds, or be arrested. And due to the high infiltration of the Dominican National Police by organized crime, his personal information will be passed on to criminal organizations who will act violently towards him because they have been waiting for him or because they believe he has money or drugs. If he manages to make it past those government detection points without arrest, he will bring himself to the attention of authorities on his own by filing a police report against Yolanda, who due to his disorder will find him and harass him because she has followed him everywhere from Union City, New Jersey to New York to every jail he's ever been at, hacking his phone and his Facebook. Or worse, he might harm an individual that he believes to be her. And when you combine this with his other vulnerabilities, which is required under the CAT analysis, being an American deportee who will be blamed for crimes, a bisexual in a country where homophobia is acute and conversion therapy is used, with gang members who are looking for him and little family support, it is more likely than not to attract heightened suspicion from the Dominican law enforcement, where he could be imprisoned, delivered to the hands of gang members who control the inside of the prisons with their own rules and systems of justice, exposed to communicable diseases, inadequate sanitary care, prisoner-on-prisoner violence, and deprived of his medication. But here... Sounds like an answer to a question, what is likely to happen if he is removed? That it is more likely than not... It is more likely than not that that will happen because of the specific vulnerabilities present here with his mental health. And here, the immigration judge did not make the required factual or legal findings under MIRI. So under the first prong, the immigration judge merely said that Mr. Flores Jimenez, first, did not suffer past torture, and second, that he was asking the court to string together a series of suppositions. And this is wrong for three reasons. First, the determination that he didn't suffer past torture is legally wrong. In Orellana, this court said that an individual who was attacked and bruised on one occasion, threatened with a gun on another, and that those encounters that directly contributed to the person's PTSD diagnosis had suffered torture. Second, past torture is not a prerequisite for finding a future torture, but it is just one element that the immigration judge must consider. And third, the determination ignores the aggregate of his other vulnerable factors, which include here his sexual orientation as a bisexual male, his mental health issues, which are constantly in flux, hearing voices, believing that people are hacking his phone, his status as an imputed drug trafficker, because Americans with deportees, American deportees with criminal records are wrongfully believed to commit crimes. And so we are asking this case be remanded for the judge to actually consider this evidence and make those findings. And that's just the first MIRI prong. The second MIRI prong, which is acquiescence, likewise has no predictive fact-finding. So the IJ first merely said that the government here did not acquiesce to past harm because of the quick police intervention of the gang incident when he was a teenager, but did not address acquiescence as in terms of future torture. And this is an error first because a single arrest and intervention is not a sufficient basis to find no acquiescence. But as I mentioned before, the immigration judge failed to consider acquiescence as it relates to his other vulnerable grounds. Has he met a burden of showing that it's more likely than not if he's returned that he would be tortured? Yes. So the more likely than not standard requires the person to show that it is. Is it because individual characteristics? His individual characteristics combined with the country conditions evidence that show the treatment of the types of people in each of the groups that he is part of and the chain of events that I just outlined, it is more likely than not that each step in the chain of events will occur, which make the entire chain more likely than not. Was that analysis done in the immigration context, what we're just talking about? The immigration judge did not conduct the proper analysis and the BIA upheld that finding. What if the judge had done that? If the judge had done that, if the judge had conducted the proper two-pronged Myrie analysis, he would have seen the country condition evidence and considered Mr. Flores-Gimenez's specific vulnerabilities to conclude that it is more likely than not he would suffer future torture, which ties back to the mental health finding. Here, the mental health finding that he is not competent also taints the cat finding because this is such an important determination of whether Mr. Flores-Gimenez will suffer torture in the Dominican Republic, and it was really underappreciated at the mental competency hearing. Thank you, counsel. Thank you. Good morning, Mr. Schor. Good afternoon, Your Honors. May it please the Court. My name is David Schor and I represent the Attorney General of the United States. The petitioner in this matter, Mr. Flores, had a full and fair opportunity to contest his removability and to present his claims for relief and protection. The immigration judge and the board found that he was competent and that even if he was not, sufficient safeguards were in place to ensure due process. They sustained the charge of removal and denied his applications for protection as speculative and asylum as untimely. May I ask, did he testify himself before the immigration judge? Yes, Your Honor. He said he was found to be competent, so he did provide testimony. Yes, yes, absolutely. I'd like to discuss competency. So the test for competency is whether or not the mental illness prevents the noncitizen from meaningfully participating in the immigration proceedings. There can be no argument on this record that Mr. Flores did not meaningfully participate. Counsel just added a new extra record assertion that she had difficulty communicating with him. That's nowhere in the record, and of course, counsel statements don't establish facts. But he presented testimony about his biographical information, about his past experiences, about his fears. He presented documentary evidence from friends and relatives. He, you know, extensively testified about his past interactions with gangs and his fears of police. But that's on the merits. As to the competency determination, there was a matter of MAM hearing to assess his competency. He repeated in his own words what his rights are, what the roles of the immigration judge is to determine whether or not he can stay. He repeated in his own words not a verbatim recitation of what the immigration judge had told him, that he's alleged to have come without documentation. Those were his own words. And he talked about the relief of asylum that he was pursuing. All of this demonstrated, as well as his full-throated participation in the proceedings, that he understood. He was competent. And thus there was the finding of competency. Did he have counsel? I'm sorry? Did he have counsel? He had the same attorney, Mr. Rillo, throughout the totality of the proceedings. And at the conclusion of the competency hearing, I believe Mr. Rillo said, yes, Your Honor, he clearly, without hesitation, answered all the questions, as he has in the past. And then she said, but we're here because of his records, his psychiatric records. Well, the immigration judge, in making competency finding, considered those records. To say that the immigration judge ignored them is just a dressed-up way of saying, please re-weigh the evidence, because the immigration judge didn't reach the desired finding of incompetency. The immigration judge talked about the diagnosis of not otherwise specified psychosis, and talked about these episodes that he has, where he has paranoia and he can have delusions. All of this was discussed, pages 198, 199, 200, with immigration judges setting forth the competency finding. All of this, the immigration judge expressly discussed and The immigration judge discusses this evidence again in the ultimate written decision. So all of this was meaningfully considered. May I ask where that got the immigration judge? In other words, did he make a come to a conclusion as a result of his assessment of his mental condition? I'm sorry, I don't understand the question. Did the judge, did the immigration judge make some sort of assessment as a result of Mr. Jimenez's mental condition? Well, he made the, he made the, or she, I believe, at that time. I'm sorry, she. But made the determination. There are women judges. Yes. Yes, Your Honor. And good ones, too. That Mr. Jimenez was competent. I would like to note this also. So Mr. Jimenez was institutionalized from January to July 2019. And then, and the reason for that. Yes. Was because, was in order to make him competent for purposes of his state criminal prosecution. So he was incompetent at one point. Well, possibly for state. Well, you just didn't make him competent. For criminal. I mean, there are different tests for his state criminal proceedings. So that's why he was institutionalized. Now, and so he's released by July of 2019. And then in November 2019, there's plea proceedings in the criminal case. So there was necessarily a determination there that he was competent to enter his plea. And so, of course, and all of that predates his removal hearings. Now, counsel made a point that he's more competent when he's medicated. Well, he was medicated during his removal proceedings. He testified to it. May I ask, what was the underlying assessment, medical assessment of his condition? What problem did he have? According to his own expert, it's an acute stress disorder, which could or would mature into PTSD because of past trauma. There was also psychosis, not otherwise specified. Again, he mentioned something relating panic attacks at one point. So it appears to be a stress-related condition. Immigration judge discussed and considered all of that in finding that he understood the object and his rights in the removal proceedings. Counsel petitioner simply disagrees with that finding. But the evidence does not compel that conclusion. This is a finding of fact subject to substantial evidence review. During September and October, during the removal proceedings, was there ever any complaint or statement by petitioner's counsel about having developed incompetence or problems with competence? Counsel presented those arguments and renewed the request for a competency hearing. There was no indicia of incompetence found. The petitioner, at one point, he testified that he feels well. And again, he testified. And I believe that this was at the actual hearing on the merits of his application. He testified to the medications that he was taking. And again, what we're talking about, the June competency hearing and then the September hearing on the merits just a few months later. And the immigration judge found no indicia in that interim. Same judge? There was a different judge who presided over the competency determination. But the judge who presided over the merits hearing, he was involved in the initial stages of the proceedings and then later at the merits hearing. And certainly was aware of these arguments that were being presented and rejected them. There were arguments in September and October that Mr. Flores-Gimenez was not competent? Yeah, I believe. I don't have these specific dates off the top of my head, Your Honor. But I know that counsel was, I guess, for lack of a better term, a continuing objection to the competency determination. No new evidence or indicia of incompetence were proffered or suggested at any point. This was based on the original determination? It was, yeah. I mean, there was a continuing to object to the initial determination. Yes, Your Honor. But did the second judge ask any questions of counsel or of the petitioner which was tethered to his competence at that point? Was there a request made by counsel? I believe there's a written request made and then repetition of the objection. And the immigration judge denied that. There was not a full-fledged hearing to assess Mr. Flores' competency after the June hearing, no. But again, had the immigration judge under board case law, matter of MAM, had the immigration judge found any indicia, it certainly would have been incumbent upon the immigration judge to then proceed. But there were no indicia found. Mr. Flores next contests the finding that he's subject to removal. Now, and the government's reliance and proffer on this official record form I-213 in which DHS officers say that they looked at his cedrula, which is this Dominican Republic identity document, and they put his biographical information against these different databases and they found no record of any lawful admission ever. And of course, he admitted his birth abroad. Now, counsel, you know, or sorry, petitioner contests reliance on this form I-213. However, a petitioner is repeatedly admitted in every application that, you know, that he submitted through counsel as well as in his testimony. He was born abroad. That, of course, establishes a presumption of alienage, and it's been incumbent upon the petitioner, he bears the burden to show that a lawful admission. There is no evidence, nor has any lawful admission ever been shown in any way or any effort to show lawful admission throughout these proceedings where petitioner has been counseled. Turning to asylum, the immigration judge denied asylum as time barred. Mr. Flores arrived in 1999, and he submitted his asylum application, I believe, July 7, 2019. So we're talking 20 years. The immigration judge found that even excusing him till December 2019, so that's, you know, excusing, you know, much of that, I'm sorry, he applied in July 2020. So even excusing to December 2019, he didn't file within a reasonable time thereafter. And the reason the immigration judge used the date December 2019, that's when he was taken into DHS custody. And when all of his claims had sort of matured as to his mental competency, well, you know, he had already been found in November 2019 by the state criminal court to be confident because it accepted his plea. So, I mean, for criminal purposes, that is. And so we had this delay of seven months. The immigration judge found it was not reasonable. And so before the board, Mr. Flores argued that, you know, the immigration judge didn't fully consider the mental health issue. The board noted that he had been institutionalized for six months. The board, in what appears to be a Scrivener's error, noted it was the date listed as 2018 and 2019. Petitioner says, well, this is reviewable legal error. And no, it would be a factual error. It's a date error, if that. And even so, as the immigration judge found and the board affirmed, if we excuse him from filing the application until December 2019, which is, again, a month after he was confident for criminal purposes, even if we excuse that, the delay was not reasonable. So any error is necessarily harmless. The case that Petitioner relies upon, called Makawana, for a proposition that, I guess it's the proposition that, I don't, I'm not quite sure how to describe it, I guess that a legal error that is not harmless is reviewable as a legal question. Sorry, a factual error that is not harmless is reviewable as a legal question. Doesn't say that at all. In fact, the whole question of fact, question of law wasn't even implicated in that claim. That was a factual error by the board in denying a motion to reconsider. The criminal alien bar didn't apply. No jurisdictional bar, in fact, applied in that case. So the immigration judge did alternatively deny asylum an exercise of discretion. But the board did not reach that issue, of course. The court lacks jurisdiction to review the timeliness finding, of course. Turning very quickly to the withholding of removal and CAT claims. The immigration judge and the board denied these claims as speculative. And as you heard, counsel are citing this chain of inference. And I would note that a lot of these sort of predicate facts within this chain. Oh, he'll be stamped criminal. Well, he's not subject to removal on criminal grounds. We know that. His expert, Dr. Paul Berg, stated that he's not sure. Whether Mr. Flores qualifies as a criminal deportee. The immigration judge also found that, you know, deportees. Yes, there's, you know, stigma associated with these various sort of characteristics that Mr. Flores alleged. Difficulty finding employment, for example. But the immigration judge found that he failed to show. And again, we're talking about withholding of removal. And of course, on review, he has to show that the evidence compels the conclusion of more likely than not to be persecuted. And so he relies on this chain of speculation. That there will be a pattern of practice of persecution because of sexual orientation. Because of mental health issues. Because imputed criminality. All of that is speculation. And the immigration judge stopped the analysis explicitly at Mairi's step one. Where the immigration judge said, he said, you know, address the factual question. What is likely to happen? The immigration judge found that it's not more likely than not that these people, these various groups. The immigration judge considered all the potential sources of torture. This is like the Mairi question. Yes. Was it not? Yes. And the immigration judge considered. What is likely to happen to the petitioner if he is removed? Yes, Your Honor, absolutely. You know, the immigration judge found that corrupt police were not more likely than not to harm him. Health care workers were not more likely than not. Would you say that again? I apologize. Corrupt police are not like. Are not more likely than not. Or I should say police who happen to be corrupt. It is not. He failed to show that it's more likely than not that, you know, police will target him. Or that health care workers will, you know, subject him to isolation and restraint. I see that my time is up. But just very briefly, the immigration judge denied these claims as speculative and, you know, addressed fully Mairi step one. That is, what is likely to happen? What are officials likely to do? And the immigration judge found a lack of evidence of targeting that he failed to show he would more likely not be targeted by any number of these various possible wrongdoers in the future. And under longstanding Supreme Court precedent, INSB, I apologize for my pronunciation, Bagramazbat, the agency doesn't have to reach issues that are unnecessary to its decision. Did he himself fail to make the showing? Or did his counsel speak on his? Did he have counsel? Yeah, yes. Yes, he was counseled. He was counseled throughout proceedings. His lawyer then made the representations. Well, yeah, well, he he certainly testified to his fear of police fears of, you know, gangs, etc. And this was ultimately rejected as speculative. Which is a sufficient factual finding that you didn't show what is likely to occur will be or that what is likely to occur will be harm from any one of these sources. So then the next question, the legal question is, does it satisfy the legal definition, Mairi step two, the legal definition of torture and acquiescence? The immigration judge did not need to reach that because step one, the evidence was so inadequate. And so among that inadequate evidence, you know, there's I just very briefly, I realize my time is up, but I do just want to note. Just as on evidence says, for example, treatment ranged of the LGBT community from, quote, ambivalent tolerance to staunch homophobia, which is why the immigration judge found this evidence does not show for purposes of withholding a pattern of practice that's pervasive, systematic, given this whole what the immigration judge termed a spectrum of behavior that, you know, from discrimination on the one hand to acts of violence on the other. And the same speculative reasoning infected and dooms the petitioner's cat claim. And for all these reasons, substantial evidence supports the agency's determination. Thank you, Your Honor. Your Honors, I would like to address three points that were raised by my colleagues. The first has to do with the competency hearing, the second with the one year bar and third with cat. So first, my colleague is asserting that the IJ here considered all of the evidence relevant for cat. But if you look at the immigration judge's decision for oral for mental competency at page 200, there's a three and a half page decision about Mr. Flores Jimenez competency. But there is one very short statement about the records here that were presented here. And the rest of that analysis is about his in court testimony and demeanor. Second, Your Honors, is the one year filing deadline. So here, the immigration judge did not consider the mental health as a changed circumstance at all. It was not addressed in the decision by the immigration judge. The Board of Immigration Appeals, who considered this issue in the first instance, ignored record evidence that he doesn't appreciate the severity of his mental health, in addition to misstating the year that he was committed to Trenton Psychiatric, which was raised by my colleagues. But however, even putting the one year issue aside, which the BIA said that he was released in 2018, erroneously when he was released in 2019, the BIA here makes a giant leap of assumption, not grounded in the record, that a mentally incompetent person suddenly realizes his incompetence on the day that he is released from a facility or the day that he is receiving treatment. The record here shows that Mr. Flores Jimenez does not appreciate the severity of his own mental health issues. And it's unknown if he even truly recognizes it today. He was represented by counsel, wasn't he? Yes, it was me. Oh, okay. Well, were you satisfied with his representations or not? Yes. Was I satisfied with my own representation? Your own and your client's representation. Okay. I was satisfied with my representation, but I was not able to trust the information that he was giving to me, if that's what your honor is getting at. During the September and October merits hearing, did you ever bring to the court's attention your concern that his continuing incompetency was hindering your ability to represent him? I did at the beginning of the hearing, Judge. I don't have the page site, but it is at the beginning of the individual hearing where we're discussing the evidence and the expert. I requested that the judge conduct a renewed assessment of Mr. Flores Jimenez's competency because I had continued concerns about his competency on that date, and that I would like to request additional safeguards, and the judge declined to do so. Which brings me back to one issue that was mentioned. The judge did have a conversation with your client, or took testimony from your client during that second hearing, right? Yes. That was the hearing to determine his applications for relief, and there was testimony elicited. Yeah. Did he consider competency in that back and forth with your client? Nowhere in the judge's decision did he state that he considered competency at that hearing. And the third point, Judge, is about CAT, which is Relief Under the Convention Against Torture. This court should not be making the types of determinations that it has repeatedly reminded the agency that it needs to make on its own. So here, the agency has to go through this required two-step MIRI prong, which has first prong of a factual and legal determination, and a second of a factual and legal determination and the record must be remanded for consideration of all of Mr. Flores Jimenez's vulnerabilities, which include his sexual orientation, his mental health vulnerabilities, his status as a criminal deportee, and his political vulnerabilities here. You say none of that was done under the MIRI test or questions? None of that was done? An aggregate analysis was not conducted. But I understand it's required by the MIRI case itself. It is required and the agency here did not conduct that analysis, which is why we're asking for a remand for the factual and legal determinations to be redone. For that purpose. For that purpose and the other issues that we have raised in our briefing. Thank you, counsel. Thank you. Thank you very much for taking this pro bono into the Rutgers Law School as well. Thank you.